**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BENJAMIN NDUAGUBU, | No. 2:23-cv-00961 (MEF)(JRA) |
| *Plaintiff*, | |
| v. | **OPINION and ORDER** |
| ESSEX COUNTY et al., | |
| *Defendants*. | |

**Table of Contents**

**I.   Background**
    **A.**   **The Allegations**
    **B.**   **Procedural History**
**II.  Conspiracy**
**III. Force**
    **A.**   **Violation**
    **B.**   **Clearly Established**
**IV.  Conclusion**

\*   \*   \*

A man was arrested by local police and claims, among other things, (i) that an officer used excessive force while arresting him, and (ii) that he was discriminated against.

The officer moves to dismiss these claims.

As to the first claim, the motion is denied. As to the second, it is granted.

\*   \*   \*

## I. Background

### A. The Allegations

The relevant allegations for now are as follows.[1]

A woman[2] made a series of 911 calls to report on certain recent activity of her then-husband.[3] See Amended Complaint ("Complaint") (ECF 77) ¶¶ 15, 17, 19, 23. On the calls, the woman suggested that her husband had, among other things, tampered with the gas and heat in their shared apartment. See id. ¶¶ 19, 29.

A local police officer[4] responded to the apartment where the woman and her husband lived. See id. ¶¶ 17, 24.

The officer then came back again later.[5] See id. ¶ 34. To arrest the man. See id. ¶ 35. And to serve him with a temporary restraining order that had just been issued by a judge. See id. ¶ 34.

The man was handcuffed. See id. ¶ 36. In cuffs, he was escorted out of the apartment by the officer. See id.

On the way out, the officer "forced [the man's] face and head into [a] metal door and door frame." Id. This caused the man to "sustain[] significant injuries," id. ¶ 38; he was knocked unconscious, and taken to the emergency room of a nearby hospital. See id.

---

[1] Because this is a motion to dismiss, the Court must take all of the Plaintiff's allegations as true. See McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009). Whether they are in fact true is a question for later in the case.

[2] Stella Okeke Nduagubu.

[3] Benjamin Nduagubu.

[4] Kyle Alleyne.

[5] When exactly he came back is not specified. It is implied that he returned later the same day, see Complaint ¶ 34, but that is not crystal clear. It may possibly have been another day.

B.  **Procedural History**

In light of the above, the man (from here, "the Plaintiff") filed a lawsuit.

The lawsuit initially named nine[6] defendants. See Complaint at 1. That has been whittled down. There are now three defendants left. See Stipulation and Order of Dismissal Without Prejudice as to Defendants Matthew Funk and Dana Kutzleb (ECF 121); Stipulation and Order of Dismissal Without Prejudice Against Defendant Sheraldine Frazer (ECF 82); Stipulation and Order of Dismissal Without Prejudice as to Defendant County of Essex (ECF 130); December 16, 2025 Text Order (ECF 158).

This Opinion and Order focuses only[7] on two of the claims in the operative complaint, each of which is asserted against the above-referenced police officer.[8]

The officer is called "the Defendant" from here.

The Defendant has moved to dismiss the two referenced claims. The motion is now before the Court.

---

[6] The complaint also listed out some "John Doe" defendants. They have not been named or served, and are not accounted for here.

[7] Other claims against other defendants are taken up in an order to be issued later today.

[8] The Court takes the claims against the officer, Kyle Alleyne, as running against him in his personal capacity. The Plaintiff describes things that way. See Plaintiff Benjamin Nduagubu's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Brief") (ECF 98) at 18-19. And that makes sense. The complaint alleges that the officer was "acting under color of state law" and seeks an award of damages, Complaint ¶ 98, and "[i]f personal liability for damages under § 1983 is sought for a state officer's action taken under color of law, the suit against the officer must be brought against him in his individual or personal capacity, and not against him in his official capacity." Michael G. Collins, Section 1983 Litigation in a Nutshell 152-53 (5th ed. 2016) (citing Hafer v. Melo, 502 U.S. 21 (1991)).

3

## II. Conspiracy

The Defendant first looks to dismiss the claim for conspiracy to violate the Plaintiff's civil rights under 42 U.S.C. § 1985. See id. ¶¶ 101-04 (Count 9).

Section 1985 opens the door to lawsuits against people who work together to deprive someone "of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

But Section 1985 is no catch-all.

It is "not intended to provide a federal remedy for 'all tortious conspiratorial interferences with the rights of others,' or to be a 'general federal tort law.'" Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) (quoting Griffin v. Breckenridge, 403 U.S. 88, 101-02 (1971)).

Rather, a Section 1985 claim can get off the ground only if, among other things, there are allegations (at the motion to dismiss stage) or evidence (at later stages) of "some racial, or . . . otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. (emphasis omitted)

But there is nothing like that here.

The Plaintiff alleges that there was a conspiracy against him --- an alleged effort by the Defendant and others to falsify evidence to get him arrested. See Complaint ¶¶ 27-33, 109-11.

There is no suggestion that this was because of, say, the Plaintiff's race. Indeed, the Plaintiff's race is not mentioned in the complaint. Nor is any other part of his background.

Therefore, the Defendant's motion to dismiss the Section 1985 claim must be granted.

## III. Force

The Defendant next moves to dismiss the Plaintiff's excessive force claim. See Complaint ¶¶ 93-98 (Count 4).

The Defendant argues he is entitled to qualified immunity.[9] See Irvington Defendants' Memorandum of Law in Support of Their

---

[9] This immunity arises under federal law. The Defendant also suggests that he is entitled to immunity on a state-law basis, under New Jersey's Domestic Violence Act. See Defendant's Brief

4

Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. Pro. 12(B) ("Defendants' Brief") (ECF 93-1) at 25-26.[10]

\* \* \*

To get started, the relevant law in a nutshell: a police officer sued under Section 1983 for using too much force is entitled to have the claim dismissed on qualified immunity grounds --- unless the officer (1) "violated a . . . constitutional right," that was (2) "clearly established" at the time of the alleged violation. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011).

Move through each prong of the test.

### A.   Violation

The question under the first prong: did the Plaintiff adequately allege that the Defendant violated the Constitution by using excessive force?  See Ashcroft, 563 U.S. at 735.

To assess excessive force claims that arise in the arrest context, courts in the Third Circuit look to a range of factors --- mainly the ones laid out by the Supreme Court in Graham v. Connor, 490 U.S. 386 (1989), and by the Court of Appeals in Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997).[11]  See Est. of

---

at 20-24; N.J.S.A. § 2C:25-22.  This Act has been interpreted by the New Jersey Supreme Court as protecting those who "in good faith report a possible incident of domestic violence." Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (2000).  But it is not clear how the Defendant might be chalked up as a "report[er]" of information here.  N.J.S.A. § 2C:25-22. Moreover, the Defendant has put forth no argument as to whether and when a state-law immunity (like the Domestic Violence Act) might work as a shield to a federal-law claim (like the Plaintiffs Fourth Amendment claim).  And indeed, making such an argument stick would seem to be an uphill battle.  See Doe v. Dynamic Physical Therapy, LLC, No. 25-180, slip op. (U.S. Dec. 8, 2025) (citing Howlett v. Rose, 496 U.S. 356, 383 (1990); Haywood v. Drown, 556 U.S. 729, 740 (2009); Williams v. Reed, 604 U.S. 168, 174 (2025)).

[10]  The Defendant also argues that with or without qualified immunity, the Plaintiff's claim does not work on the merits. See Defendants' Brief at 13-16.  That is taken up in footnote 17.

[11]  The referenced Graham/Sharrar framework controls in cases like this one --- where a police officer is accused of using

5

Smith v. Marasco, 430 F.3d 140, 149-50 (3d Cir. 2005) (applying these factors); El v. City of Pittsburgh, 975 F.3d 327, 337-38 (3d Cir. 2020) (same); Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006) (same); Saintil v. Borough of Carteret, 2024 WL 3565308, at *8 & n.16 (3d Cir. July 29, 2024) (same).

Per the Supreme Court in Graham, excessive force claims are evaluated in light of "the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396 (brackets added).

In Sharrar, the Third Circuit zeroed in on some added considerations: "[4] the possibility that the persons subject to the police action are themselves violent or dangerous, [5] the duration of the action, [6] whether the action takes place in the context of effecting an arrest, [7] the possibility that the suspect may be armed, and [8] the number of persons with whom the police officers must contend at one time." 128 F.3d at 822 (brackets added).

And in another case, the Court of Appeals noted that the excessive force inquiry should also be anchored in [9], an "assess[ment of] the physical injury to the plaintiff." El, 975 F.3d at 336.

Together, these nine considerations are the Graham/Sharrar factors.[12]  Tick through them now, each in turn.

---

excessive force in carrying out his law-enforcement duties. In those circumstances, the applicable part of our constitutional law is the Fourth Amendment. See Graham, 490 U.S. at 394. In other contexts that implicate government uses of force, other constitutional provisions may be in play. The Eighth Amendment, for example, as to uses of force in the prison context. See Whitley v. Albers, 475 U.S. 312, 318-26 (1986).

[12]  The Defendant briefly suggests there is a tenth factor --- whether the officer intended to cause serious injury. See Defendant's Brief at 13-14. But that seems to be at odds with what the Supreme Court has said. See Graham, 490 U.S. at 397-99 (holding that the excessive force inquiry is undertaken "without regard to [an officer's] underlying intent or motivation"). If, later, the Defendant wishes to more substantially develop this

6

\* \* \*

First: "the severity of the crime at issue," Graham, 490 U.S. at 396 --- the one a plaintiff was being arrested for. See Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995).

Here, the Plaintiff alleges[13] that he was "ostensibly arrested for petty offenses." Complaint ¶ 40.

And in applying the relevant factor, the Third Circuit has suggested that "petty offenses" do not count as "particularly severe." Groman, 47 F.3d at 634.[14]

That points in the direction of relatively tighter limits on how much force an arresting officer can use.

\* \* \*

The second consideration is "whether the suspect poses an immediate threat to the safety of the officers or others." Graham, 490 U.S. at 396. And on the allegations here, that runs together with the fourth factor: "the possibility that the persons subject to the police action are themselves violent or dangerous." Sharrar, 128 F.3d at 822.

---

argument, cf. Thomas v. City of Erie, 236 F. App'x 772, 776 (3d Cir. 2007), he may seek to do so.

[13]  For now, the focus is on what is alleged by the Plaintiff in the complaint. That is because qualified immunity is raised here on a Rule 12(b)(6) motion to dismiss. And at this stage, "qualified immunity will be upheld . . . only when the immunity is established on the face of the complaint." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (cleaned up) (emphasis added).

[14]  A fuller sense of what the Plaintiff allegedly did could change the picture. But for now, nothing more is before the Court. For example, a probable cause affidavit has been filed on the court docket by the Defendant. See Exhibit B, Affidavit of Probable Cause (ECF 93-2) at 11-12. But even assuming it might be considered here, the affidavit does not shed real light. It looks like it was originally ten pages long. See id. But only two of those pages have been put before the Court. See id. They indicate that three charges were brought against the Plaintiff. But not what they were. See id. at 11.

7

Per the complaint, when the Plaintiff was pushed into the metal door frame, his "hands were handcuffed behind his back" and he was "not resist[ing] arrest."  Complaint ¶ 36.

This does not imply an "immediate threat" (under the second factor) or "the possibility" that the Plaintiff was "violent or dangerous" (under the fourth).  See Anglemeyer v. Ammons, 92 F.4th 184, 190-91 (3d Cir. 2024) (in an excessive force case where the evidence indicated that an officer stepped on a plaintiff, pulled him up by his restraints, and struck him in the face ---reversing a district court's grant of summary judgment on qualified immunity grounds because "the officers could not have reasonably believed that [the plaintiff] posed any threat, and there [was] no indication that he was resisting the officers' restraints").[15]

\*   \*   \*

The third factor is whether the arrestee was "actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396.

There are no suggestions of that on the allegations here.  Indeed, the complaint affirmatively alleges the Plaintiff did not resist arrest.  See Complaint ¶ 36.

\*   \*   \*

The fifth Graham/Sharrar factor is the "duration of the action," Sharrar, 128 F.3d at 822, measured by the officer/defendant's "entire involvement in the encounter."  El, 975 F.3d at 337 & n.6.

The main idea here is for the law to do some sifting --- to distinguish (a) "case[s] where an officer ha[s] 'mere seconds to assess the potential danger,'" from (b) situations that develop more slowly, where there is a good deal of time for police to think things through, to adjust their tactics and their approach as circumstances might start to shift.  Id. (quoting James v. N.J. State Police, 957 F.3d 165, 172 (3d Cir. 2020); Kisela v. Hughes, 584 U.S. 100, 105 (2018)).

---

[15] For cases in which the "immediate threat" factor points away from an excessive force conclusion, see, for example, Mellott v. Heemer, 161 F.3d 117, 122-23 (3d Cir. 1998) and Moore v. Vangelo, 222 F. App'x 167, 170-71 (3rd Cir. 2007).

The law gives a bit more leeway on one end of the spectrum ("mere seconds") than the other (when there is a lot of time).

Here, it is not perfectly clear how long things took to unfold. But as alleged, it appears that the underlying events likely took a fair amount of time. The arrest took place "approximately ten (10) minutes after [the Defendant] entered the apartment." Complaint ¶ 35. And force is said to have been applied after that, while the Plaintiff was being led out of the apartment. See id. ¶ 36.

This was not an especially fast-moving circumstance. And given that there were, as alleged, no warning signs of "potential danger," El, 975 F.3d at 337 n.6, what time there was --- it was enough. To assess the situation, and to do so with an eye to taking a measured tack.

\* \* \*

The sixth factor: "whether the action takes place in the context of effecting an arrest." Sharrar, 128 F.3d at 822.

This matters because "Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it." Graham, 490 U.S. at 396.

But the force used must be necessary. To make the arrest. And to do so in a way that is safe --- a way that protects both the public and the police officer, and that keep the situation under control.

Too much force is not allowed. See, e.g., Baker v. Borough of Tinton Falls, 2020 WL 5269887, at \*8 (D.N.J. Sept. 4, 2020) (stating that "force in the context of effectuating an arrest . . . generally weighs in favor of the officer," but nevertheless concluding that a reasonable jury could find the force used unreasonable under the circumstances); Ference v. Twp. of Hamilton, 538 F. Supp. 2d 785, 809 (D.N.J. 2008) (similar).

And the Third Circuit has indicated that where an arrestee poses no active threat, is not armed, and is not attempting to flee or to resist arrest --- then only a "low level of force" is generally permissible. Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006).

On the Plaintiff's allegations, that fits this case. An arrest was underway. See Complaint ¶¶ 35-38. But without any

9

suggestion, at least as alleged, of threats or weapons or violence, or of attempts to flee or to resist. On these allegations, only a "low level of force" was allowed. Couden, 446 F.3d at 497. But that is not consistent with what allegedly happened --- pushing the Plaintiff's head into a "metal door and door frame," Complaint ¶ 36, and injuring him to the point he needed to be taken to the hospital. See id. ¶ 38.

\* \* \*

The seventh factor is the "possibility that the suspect may be armed," Sharrar, 128 F.3d at 822, and the eighth is "the number of persons with whom the police officers must contend with at one time." Id.

Here, there are no allegations that the Plaintiff was armed. And it appears there were multiple officers on the scene, see Complaint ¶ 98 (referring to "officers," plural), and only one arrestee to "contend" with. Sharrar, 128 F.3d at 822.

\* \* \*

The ninth and final factor is "the physical injury to the plaintiff." El, 975 F.3d at 336.

Here, the Plaintiff has alleged "significant injuries." Complaint ¶ 38. Ones that were forceful enough to have "knocked [him] unconscious" and required him to be "transported to the emergency room" of a nearby hospital." Id.

\* \* \*

What this all adds up to.

On his allegations, analyzed under each of the nine Graham/Sharrar factors, the Plaintiff has plausibly alleged a violation of the Fourth Amendment's excessive force prohibition.

An underlying offense that was not "particularly severe"[16] (first factor). Plus, no threat of violence (fourth factor), no presence of weapons (seventh factor), no resisting arrest (third factor). Force applied to a handcuffed arrestee (second, third, and fourth factors). And enough time (fifth factor) and enough officers (eighth factor) for things to have gone a different way.

---

[16] Groman, 47 F.3d at 634.

10

On these alleged "facts and circumstances," Graham, 490 U.S. at 396, only a limited amount of force was allowed.

But more than that is said to have been used --- the Plaintiff has alleged that his head was pushed into a metal door frame, and that as a result he was knocked unconscious and transported to an emergency room (ninth factor).

This adds up to a plausible allegation of a Fourth Amendment excessive-force violation.  And it means that the Defendant is not entitled to qualified immunity under at least the first prong of the analysis.[17]

Turn now to the second prong of the qualified immunity analysis.

### B. Clearly Established

Even where a plaintiff, as here, has plausibly alleged that an officer violated his rights --- the officer may still be entitled to qualified immunity, if the alleged rights-violation was not "clearly established" at the time of the incident. Ashcroft, 563 U.S. at 735.

The Defendant presses this argument.  But as set out just below, it does not work.

\*   \*   \*

Per the Third Circuit, in order for a right to be "clearly established," existing case law must provide "fair warning." Stringer v. Cnty. Of Bucks, 141 F.4th 76, 86 (3d Cir. 2025) (cleaned up).

The source of that warning can be Supreme Court or Third Circuit caselaw, or caselaw that reflects "a consensus of persuasive

---

[17] "There is no daylight between the first prong of the qualified immunity inquiry and a 12(b)(6) analysis." Stringer v. Cnty. Of Bucks, 141 F.4th 76, 88 n.9 (3d Cir. 2025). Therefore, because the Defendant did not prevail on the first prong, as stated in the text, the Court will also not dismiss the Plaintiff's claim on Rule 12(b)(6) grounds.

11

authority in the Courts of Appeals" more generally, from other circuits.  Id. at 85.[18]

\* \* \*

Here, there was "fair warning."  Stringer, 141 F.4th at 86 (cleaned up).  The cases show that.

In Pratt v. Port Authority of New York and New Jersey, 563 F. App'x 132 (3d Cir. 2014), for example, the Third Circuit concluded that a district court erred in granting summary judgment to officers on an excessive force claim when the arrestee "did not resist . . . in any way, was unarmed, and had committed, if anything, a relatively minor offense."  Id. at 135.  The evidence there was that the officer-defendant "tackled" the plaintiff "face-first, onto the ground," and ultimately caused him "serious and permanent spinal injuries."  Id.

Or take Anglemeyer v. Ammons, 92 F.4th 184 (3d Cir. 2024).

There, the Third Circuit concluded that a reasonable jury could find that an officer "engaged in objectively unreasonable conduct when he picked up [a plaintiff] by his zip-tied arms and dropped him on the floor, tearing both of his rotator cuffs" --- because although the officer "saw a handgun lying on the back of [the plaintiff's] bed," the officer harmed the plaintiff "after he was fully secured, cooperative, and not a risk of flight".  Id. at 191.

Along the way, see id., the court in Anglemeyer cited Jacobs v. Cumberland County, 8 F.4th 187 (3d Cir. 2021).

And Jacobs explained that "striking a physically restrained and nonthreatening" person is "nowhere near the hazy border between excessive and acceptable force."  Id. at 197 (cleaned up).

As to this point, there is also a "consensus of persuasive authority [among other] Courts of Appeals."  Stringer, 141 F.4th at 85.

In Blazek v. City of Iowa City, 761 F.3d 920 (8th Cir. 2014), for example, the Eighth Circuit concluded that if the plaintiff could "prove at trial that he was subdued and compliant, but

---

[18] The relevance of other sources of law to qualified immunity, like district court opinions, see Courney v. City of Englewood, 793 F. Supp. 3d 615, 621 n.14 (2025), need not be taken up here.

12

that the officers grabbed him by the arms and gratuitously 'jerked' him from the floor onto the bed, using enough violent force to cause significant injury, then . . . a reasonable jury could find a violation of the Fourth Amendment." Id. at 926 (cleaned up).  And the court went on to hold that the "law was sufficiently developed to show that such a violation --- allegedly involving unnecessary violence against a handcuffed and compliant detainee --- would contravene clearly established law as of 2009."  Id.

Similarly, in Butler v. City of Detroit, 936 F.3d 410 (6th Cir. 2019), the Sixth Circuit held that when an arrestee was "fully cooperative," officers that "slammed [him] into [a] wall . . . ha[d] no claim to qualified immunity."  Id. at 425 (cleaned up). The court went on to say that "[a]ssaulting an unarmed and compliant individual has been a clearly established violation of the Fourth Amendment for decades."  Id.

And in Ketcham v. City of Mount Vernon, 992 F.3d 144 (2d Cir. 2021), the Second Circuit cited Maxwell v. City of New York, 380 F.3d 106 (2d Cir. 2004), for the proposition that "a shove of a restrained defendant into a police car causing the defendant's head to strike a hard surface inside the car could constitute excessive force."  Ketcham, 992 F.3d at 149-50 (citing Maxwell, 380 F.3d at 109).

*   *   *

For now, the Plaintiff's allegations are taken as true.  See footnote 1.  At the core of those allegations is the contention that a handcuffed arrestee was pushed hard into a metal door frame, and as a result was knocked out and had to be taken to the hospital.  See Complaint ¶¶ 36, 38.  And on the allegations here, there is nothing on the other side of the ledger.  No weapons, violence, or resistance, for example.  And no suggestion of a situation that was especially difficult or fast-moving.

The cases discussed above provide "fair warning" that in such a circumstance the alleged conduct of the Defendant violated "clearly established" law.[19]  Stringer, 141 F.4th at 85.

---

[19] Changed circumstances could potentially have led to a changed outcome.  If the Plaintiff had been resisting arrest, for example, cf. Santini v. Fuentes, 739 F. App'x 718, 721 (3d Cir. 2018), or was armed.  Cf. Carswell v. Borough of Homestead, 381

13

\* \* \*

In sum, on the allegations here, it is not clear from the face of the complaint that the Defendant is entitled to qualified immunity on the excessive force claim.

Therefore, the Defendant's motion to dismiss that claim must be denied.

## IV. Conclusion

The Defendant's motion to dismiss is granted in part. See Part II. And it denied in part. See Part III.

IT IS on this 16th day of December, 2025, SO ORDERED.

_____
Michael E. Farbiarz, U.S.D.J.

---

F.3d 235, 243-44 (3d Cir. 2004). But nothing like that has been put before the Court.